No. 103,467

STATE OF KANSAS, *Appellee*, v. JAIME RODRIGUEZ, *Appellant*.

(289 P.3d 85)

Opinion filed December 7, 2012.

*Joanna Labastida*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke*, chief deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Jaime Rodriguez appeals his conviction of first-degree felony murder in the death of his 5-month-old son, Louie. He argues that the district court judge erred by failing to instruct *sua sponte* on reckless second-degree murder and reckless involuntary manslaughter, by giving an incorrect jury instruction on child abuse, by admitting gruesome photographs that were unduly graphic and cumulative, and by denying his motion for new trial.

We hold that there was no error and affirm Rodriguez' conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Louie was the son of Corrine Quinonez and defendant Rodriguez; he died December 17, 2006. He had been in poor health during his 5 months of life, spending the first of them in a neonatal intensive care unit and then making several visits to doctors for a variety of problems.

Approximately 1 week before his death, Louie's mother took him to the emergency room because, according to her, Louie had "ballooned up beyond recognition and he was having extreme difficulty breathing." Louie was treated and sent home with a prescription for steroids, but his mother could not afford to fill the prescription.

Two days later, Louie was home with both of his parents. His mother prepared a bottle of formula, but Louie consumed less than usual. About 3 p.m., Louie's mother left Louie at home with Rodriguez. When she returned about an hour later, Rodriguez was frantic and on the phone with a 911 operator, and he yelled that Louie was not breathing.

When paramedics arrived, Louie's mother was performing mouth-to-mouth resuscitation on Louie. The paramedics took over and observed that Louie was gasping and that his lips were blue. Louie's mother told the paramedics that she thought Louie was

having an allergic reaction. Rodriguez said nothing. The paramedics rushed Louie to Providence Medical Center in Kansas City.

Upon Louie's arrival at Providence, Dr. Marianna Poulose placed a tube down his throat to administer oxygen. Louie was limp and unresponsive and had blood in the whites of his eyes. Another doctor administered epinephrine to help with Louie's heart function. In addition, the doctors ordered a chest X-ray and conducted blood tests. After 20 minutes, Louie was air-lifted to Children's Mercy Hospital in Kansas City, Missouri, for specialized care.

At Children's Mercy, Louie was placed on a ventilator to stabilize his oxygenation. Dr. Patricia Webster noticed that Louie's "soft spot" on his head was tense and bulging, suggesting that there was excessive pressure inside his skull. A CT scan revealed significant blood around the surface of Louie's brain and extreme swelling of the brain itself. Webster also saw blood in Louie's left eye. She believed his injuries were consistent with those of a shaken baby. Dr. Michael Moran and Dr. Laura Plummer also examined Louie the day after he was admitted to Children's Mercy.

Rodriguez told hospital personnel and investigators that he had been asleep in bed with Louie while Louie's mother was gone. When Louie awoke, Rodriguez got up and changed Louie's diaper, then went to the kitchen to dispose of the diaper. When Rodriguez returned to the bedroom moments later, Louie was unresponsive and was having difficulty breathing. Rodriguez called 911.

Within a few days of Louie's arrival at Children's Mercy, he was pronounced brain dead, and his mother approved removal of life support. Dr. Erik Mitchell, a forensic pathologist, conducted Louie's autopsy.

Rodriguez was charged with first-degree felony murder with child abuse as the underlying felony. His first trial ended in a hung jury, and he was retried.

At the retrial, the State put on several doctors who treated or reviewed Louie's condition before his death. Webster testified that it was her opinion vigorous shaking had caused Louie's injuries, which were consistent with "nonaccidental trauma." Moran testified that he had reviewed Louie's CT scans and that they showed Louie's brain was "massively swollen," causing the bones of his

skull to separate. Moran concluded that Louie's injuries were the result of "intentionally inflicted head trauma." Plummer testified that Louie had multilayered hemorrhaging of the eyes and that this type of injury was consistent with "shaken baby nonaccidental trauma."

The district judge conducted a hearing outside the presence of the jury regarding four autopsy photos the State planned to offer as evidence. Three photos showed Louie's scalp pulled back; the fourth was taken after Louie's skull had been removed and showed his brain covered in coagulated blood. Defense counsel objected to the admission of the photos, arguing that they were "very prejudicial" because of their graphic nature, that their prejudicial effect "far outweigh[ed] any probative value," and that the photos would inflame the jurors' passions. The district judge overruled the objection.

Defense counsel renewed the objection to the photos when they were offered into evidence during Mitchell's testimony, and the renewed objection also was rejected. Mitchell testified that Louie had blood between his skull and his brain. Because there was no bleeding elsewhere in the brain, Mitchell concluded that Louie suffered some form of trauma, either a direct impact or as a consequence of rotational movement, *i.e.*, shaking.

Rodriguez' sole witness in the second trial was Dr. Mohammed Al-Bayati, a pathologist and toxicologist, who testified that his review of Louie's medical history and the hospital records suggested that an infection was the cause of Louie's death, specifically, whooping cough. Al-Bayati based his conclusions in part on fluctuation of Louie's weight and height measurements between doctor visits. Al-Bayati's conclusions relied in part on his belief that Louie's brain was not swollen when Louie was admitted to the hospital, a belief based on his misreading of Louie's CT scan report. During cross-examination, the prosecutor pointed out that Al-Bayati missed the fact that Louie had shown signs of brain swelling when admitted. Al-Bayati acknowledged the mistake, but he stood by his conclusion that Louie died as a result of an infection.

The State called Mitchell to the stand as a rebuttal witness. When asked what he disagreed with regarding Al-Bayati's conclu-

sions, Mitchell stated, "It's actually hard to start because it was an incredible mix of fact and misinterpretation." Mitchell described Al-Bayati's discussion regarding the fluctuation in Louie's height as "hogwash." The district judge then interrupted Mitchell and instructed counsel to approach the bench; the judge told counsel that he was not going to allow Mitchell to "just tak[e] shots" at Al-Bayati. Mitchell's subsequent testimony focused on his disagreement with Al-Bayati's analysis.

Defense counsel did not object to the district judge's proposed jury instructions or request any lesser included offense instructions. The jury's child abuse instruction was modeled on PIK Crim. 3d 58.11 and required proof "1. That the defendant intentionally shook a child to-wit: Louie Rodriguez, which resulted in great bodily harm to said child; 2. That said child was under the age of 18 years." Rodriguez' jury also was instructed that "[g]reat bodily harm means something more than slight, trivial, minor or moderate bodily harm and does not include mere bruises."

During deliberations, the jury sent a question to the judge about whether it could arrive at a verdict on a lesser charge. The prosecutor suggested that the judge respond that "in this case there are no lesser offenses." Defense counsel agreed, saying the instructions "should be all or nothing." The district court then informed the jury that there were no lesser charges.

After the jury reached its guilty verdict, Rodriguez filed a motion for new trial. He argued that there was insufficient evidence to convict him and that Mitchell's rebuttal testimony expressed an improper opinion on the credibility of another witness. The district judge rejected the motion, characterizing the evidence in support of guilt as "substantial." The judge agreed that Mitchell's reference to "hogwash" was inappropriate, but the judge did not believe the reference changed the outcome of the case.

## DISCUSSION

### Lesser Included Offense Instructions

Rodriguez' first claim of error focuses on the district judge's omission of jury instructions on reckless homicides, both second-degree murder and involuntary manslaughter.

Lesser included offense instructions are governed by K.S.A. 22-3414(3):

"In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime as provided in subsection (2) of K.S.A. 21-3107, and amendments thereto, the judge shall instruct the jury as to the crime charged and any such lesser included crime." K.S.A. 22-3414(3).

In other words, lesser included offense instructions must be given when there is some evidence, emanating from whatever source and proffered by whichever party, that would reasonably justify a conviction of some lesser included crime. *State v. Simmons*, 295 Kan. 171, Syl. ¶ 3, 283 P.3d 212 (2012); see *State v. Williams*, 295 Kan. 506, 286 P.3d 195, 205 (2012) ("[T]he giving of lesser included crime instructions is not a matter of discretion with the trial judge."). "The court's duty to instruct on lesser included crimes is not foreclosed or excused just because the lesser included crime may be inconsistent with the defendant's theory of defense." *Simmons*, 283 P.3d 212, Syl. ¶ 3. To determine whether a lesser included offense instruction should have been given, this court views the evidence in a light most favorable to the defendant. *State v. Tahah*, 293 Kan. 267, 273, 262 P.3d 1045 (2011). These standards apply to first-degree felony murder in the same way that they apply to other crimes. *State v. Berry*, 292 Kan. 493, 513, 254 P.3d 1276 (2011) (disapproving judicially created exception for felony-murder prosecutions).

Rodriguez did not request any lesser included offense instructions at trial. We recently outlined the analytical framework for jury instruction issues that arise for the first time on appeal:

"K.S.A. 22-3414(3) establishes a preservation rule for instruction claims on appeal. It provides that no party may assign as error a district court's giving or failure to give a particular jury instruction, including a lesser included crime instruction, unless: (a) that party objects before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds for objection; or (b) the instruction or the failure to give the instruction is clearly erroneous. If an instruction is clearly erroneous, appellate review is not predicated upon an objection in the district court."

"To determine whether an instruction or a failure to give an instruction was clearly erroneous, the reviewing court must first determine whether there was any error at all. To make that determination, the appellate court must consider

whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record."

"If the reviewing court determines that the district court erred in giving or failing to give a challenged instruction, then the clearly erroneous analysis moves to a reversibility inquiry, wherein the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *Williams*, 286 P.3d 195, Syl. ¶¶ 3-5.

Under this framework, there is no error, much less clear error, unless the full record before us establishes that the omitted instructions on reckless homicides would have been legally and factually appropriate.

The instructions were legally appropriate because second-degree murder and involuntary manslaughter are lesser included offenses of first-degree murder. See *State v. Engelhart*, 280 Kan. 113, 135, 119 P.3d 1148 (2005); PIK Crim. 3d 69.01. Unintentional second-degree murder is a killing committed recklessly under circumstances manifesting extreme indifference to the value of human life. K.S.A. 21-3402. Involuntary manslaughter differs from second-degree murder only in the degree of recklessness required to prove culpability. K.S.A. 21-3404. In a first-degree murder case, lesser included offense instructions for second-degree murder or involuntary manslaughter must be given to the jury if there is some evidence that would reasonably justify a conviction for either charge. K.S.A. 22-3414(3).

But the instructions about which Rodriguez complains were not factually appropriate in this case. The State sponsored plentiful evidence that Louie was in his father's sole care at the time he suffered his ultimately fatal injuries. The three physicians who examined Louie were united in their opinions that those injuries were intentionally inflicted. The pathologist who performed Louie's autopsy also agreed with this assessment. There was no conflicting evidence supporting recklessness from either side or even from Rodriguez' pretrial statements to Louie's health care providers or law enforcement. At trial, Rodriguez relied on his expert for tes-

timony supporting the nonexistence of any criminal intent. In Al-Bayati's view, whooping cough was to blame for Louie's death.

We recognize that we have required lesser included offense instructions even when they are inconsistent with the theory of defense. See *Simmons*, 283 P.3d at 216-17 (simple battery instruction should have been given in aggravated battery case; jury should decide how to classify evidence on manner in which defendant inflicted bodily harm, despite "I-did-not-hit-her" trial defense); *Tahah*, 293 Kan. at 273 (second-degree murder, involuntary manslaughter instructions should have been given in felony-murder case; defendant's written and videotaped confessions admitted into evidence inconsistent with defendant's story at trial). But the trial record in these earlier cases contained evidence to support the lesser included instructions at issue.

We have no such evidence before us here, only appellate defense counsel's speculation that the jury could have opted to believe Rodriguez did *something* to Louie and that it qualified for the label of "reckless" rather than "intentional." The jury's question supports an inference that at least some of its members would have liked to have a compromise verdict available in this tragic case. But such a compromise would not have been supported by sufficient evidence; indeed, it would not have been supported by *any* evidence. The evidence was not that Louie's injuries were simply the result of trauma, perhaps recklessly inflicted, but rather that the injuries were the result of intentionally inflicted trauma. "The extent of the injury did not permit a reasonable conclusion that the injur[ies] occurred accidentally." *State v. Heath*, 264 Kan. 557, 573, 957 P.2d 449 (1998). In short, the only evidence before the jury excluded the lesser included offenses. See *Gaona*, 293 Kan. at 951; *Simmons*, 282 Kan. at 743.

Because the lesser included offense instructions on reckless homicide that Rodriquez raises on appeal would not have been factually appropriate at trial, there is no error.

*Instruction on Child Abuse*

Rodriguez also challenges the jury instruction on child abuse. Because he did not object to the wording of the instruction at trial,

our analysis is the same as that outlined for K.S.A. 22-3414(3) in our discussion of the previous issue.

Under K.S.A. 21-3609, child abuse is defined as "intentionally torturing, cruelly beating, shaking which results in great bodily harm or inflicting cruel and inhuman corporal punishment upon any child under the age of 18 years."

The district judge's instruction closely followed the statutory definition and was drawn directly from PIK Crim. 3d 58.11. The jury also was told that "[g]reat bodily harm means something more than slight, trivial, minor or moderate bodily harm and does not include mere bruises."

Rodriguez argues that the instruction on child abuse nevertheless violated his right to a fair trial because it did not require the jury to find every fact necessary to establish the crime of child abuse beyond a reasonable doubt. Specifically, Rodriguez argues that the instruction deprived the jury of the opportunity to make a factual finding that great bodily harm resulted from shaking. Instead, according to Rodriguez, the district court instructed the jury that shaking a child automatically results in great bodily harm. Rodriguez suggests that the instruction should have read:

"1. That the defendant intentionally shook a child to-wit: Louie Rodriguez

"2. That shaking resulted in great bodily harm to said child;

"3. That said child was under the age of 18 years."

"Ordinarily, whether a victim has suffered great bodily harm is a question of fact for the jury to decide." *Williams*, 286 P.3d 195, Syl. ¶ 7. A district judge invades the province of the jury "when, instead of simply instructing the jury on the law, he applies the law to the facts he has determined." *State v. Brice*, 276 Kan. 758, 770, 80 P.3d 1113 (2003). "This is tantamount to a directed verdict for the prosecution, a result that is condemned by the Constitution." 276 Kan. at 770.

Rodriguez relies exclusively on our 2003 *State v. Brice* decision to support his argument. In *Brice*, defendant Derek Brice was convicted of aggravated battery. Brice appealed, arguing that the jury instructions invaded the province of the jury. The instruction at issue stated: " 'As used in these instructions, the term Great Bodily

Harm means, a "through and through bullet wound." ' " 276 Kan. at 762. Essentially, the district court instructed the jury that a "through and through" bullet wound constituted great bodily harm as a matter of law, 276 Kan. at 764, and this court explained that such an instruction invaded the province of the jury as factfinder by instructing that the State's evidence established an essential element of the charge, 276 Kan. 772.

The instruction in *Brice* is not analogous to the instruction Rodriguez challenges here. The child abuse instruction did not make shaking and great bodily harm synonymous, and it correctly informed the members of the jury that they had to find a causal relationship between the shaking and the great bodily harm. Moreover, Rodriquez' suggested reformulation of the instruction would have told his jury nothing new, different, or more clear. There was no error in the child abuse instruction as given.

*Admission of Gruesome Photographs*

Rodriguez also argues on this appeal that the autopsy photos were unduly graphic and cumulative.

"The standard of review for the admission of photographic evidence requires the appellate court to first determine whether the photos are relevant. If a party argued that the photographs are overly repetitious, gruesome, or inflammatory, that is to say, prejudicial, the standard of review is abuse of discretion." *Riojas*, 288 Kan. at 387.

This court also reviews a question of whether evidence is cumulative for an abuse of discretion. *State v. Dale*, 293 Kan. 660, 663, 267 P.3d 743 (2011).

" 'Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.' " *State v. Robinson*, 293 Kan. 1002, 1027-28, 270 P.3d 1183 (2012) (quoting *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 [2011]).

The burden of showing an abuse of discretion rests with the party asserting the error. *State v. Burnett*, 293 Kan. 840, 853, 270 P.3d 1115 (2012).

Photographic evidence, like other evidence offered at trial, is relevant and generally admissible if the photographs have a reasonable tendency to prove a material fact in the case. *State v. Miller*, 284 Kan. 682, 698, 163 P.3d 267 (2007). Although they may sometimes be gruesome, autopsy photographs that assist a pathologist in explaining the cause of death are relevant and admissible. *Riojas*, 288 Kan. at 387; *State v. Decker*, 288 Kan. 306, 309, 202 P.3d 669 (2009); *State v. Cavaness*, 278 Kan. 469, 477, 101 P.3d 717 (2004). However, admitting gruesome photographs simply to " 'inflame the minds of the members of the jury' " is error. *Riojas*, 288 Kan. at 387 (quoting *State v. Boyd*, 216 Kan. 373, 377, 532 P.2d 1064 [1975]). We have also often said that admission of unduly repetitious photographs can constitute an abuse of discretion. *State v. Hill*, 290 Kan. 339, 362, 228 P.3d 1027 (2010). The key, as with prejudice, is the word unduly. *Cf. State v. Clark*, 261 Kan 460, 478, 931 P.2d 664 (1997) (prejudice expected; only undue prejudice reversible). The admission of photographs in a murder case has rarely been held to be an abuse of discretion. *State v. Sappington*, 285 Kan. 176, 195, 169 P.3d 1107 (2007).

Here the photographs were undeniably gruesome. The four images depicted a 5-month-old baby at different stages of an autopsy. Three showed Louie's scalp pulled back, exposing his skull. In one, Louie's skull had been removed in order to show his brain and coagulated blood. In each of the photographs, Louie's skin and hairline were visible.

But all four photographs assisted Mitchell in explaining the factors he relied upon in reaching his conclusions on the nature of the trauma Louie suffered and on the cause of his death. Because there was no external bruising, the true extent of the injuries was not apparent until revealed by the autopsy, and the photographs visually memorialized Mitchell's internal physical findings, including separation of the bone plates, bleeding, and swelling of the brain. Under these circumstances, the photographs, although gruesome, were probative and not unduly prejudicial.

Rodriguez' second argument that the photographs were cumulative is based on his belief that it was error to permit Mitchell to testify about Louie's injuries and then, in effect, repeat his testi-

mony by pointing to the images. "Cumulative evidence is evidence of the same kind to the same point, and whether it is cumulative is to be determined from its kind and character, rather than its effect." *State v. Hickles*, 261 Kan. 74, 88, 929 P.2d 141 (1996).

Rodriguez relies on an unpublished decision from our Court of Appeals, *State v. Glassburn-Hoesli*, No. 89,441, 2004 WL 48175 (Kan. App. 2004), for the proposition that evidence with little relevance beyond that of other evidence already heard by a jury should be excluded as cumulative. We have previously read *Glassburn-Hoesli* somewhat differently:

> "Contrary to the defendant's argument, the court in *Glassburn-Hoesli* merely affirmed a court's discretion to exclude additional evidence; it did not hold that the court was required to do so. This reasoning is fully in keeping with our previous decisions, which have found that although '[t]here are instances when the trial court may in the exercise of its discretion refuse to admit testimony which is cumulative,' cumulative evidence is not itself objectionable. [Citation omitted.]" *Miller*, 284 Kan. at 699.

The four photographs Rodriguez questions depicted Louie's internal injuries in a way that Mitchell's mere words could not. In this way, they had additional relevance. In addition, they were not repetitious of each other, because each was taken from a different angle. See *State v. Altum*, 262 Kan. 733, 744, 941 P.2d 1348 (1997) ("All five autopsy photographs show the child's head, but there are three distinctly different depictions . . . . Because there is probative value in each view, there is no undue repetition."). We thus do not regard the photographs as cumulative and see no abuse of discretion in their admission.

*Motion for New Trial*

Finally, Rodriguez argues that Mitchell's "hogwash" comment on rebuttal expressed an improper opinion on the credibility of another witness, Al-Bayati, and that the district judge erred when he did not grant a new trial on this basis. Rodriguez no longer pursues the sufficiency claim he advanced in the district court.

This court reviews a district judge's decision on a motion for new trial for abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 285 P.3d 361, 372-73 (2012).

"A witness may not express an opinion on the credibility of another witness." *State v. Albright*, 283 Kan. 418, 430, 153 P.3d 497 (2007). The determination of the truthfulness of any witness is for the jury. 283 Kan. at 430-31; *State v. Kuykendall*, 264 Kan. 647, 651, 957 P.2d 1112 (1998) ("It is the function of the jury in a criminal case to determine the weight and credit to be given the testimony of each witness, whether expert or lay in nature."). It is also improper for a witness to offer an opinion as to the defendant's guilt. See *State v. Steadman*, 253 Kan. 297, 304, 855 P.3d 919 (1993) (police officer's testimony on opinion about defendant's guilt warranted new trial).

As the State concedes, Mitchell's barnyard description of Al-Bayati's opinion on cause of death based on Louie's fluctuating height measurements was improper because it was a statement about the credibility of another witness. But Rodriguez is incorrect that Mitchell's comment also constituted an opinion on Rodriguez' guilt. Neither the statement nor its context supports this further argument. Mitchell was critiquing Al-Bayati's methodology and conclusion, which is the fair province of a competing expert. Mitchell was not offering an opinion on guilt or innocence.

Did the "hogwash" error demand the cure of a new trial? It did not. The comment was isolated and limited in scope; the district judge immediately reacted, ensuring no repeat of the problem; Mitchell confined his subsequent testimony to appropriate subjects; and the jury was able to make its own credibility determination, no doubt based in part on the demonstrated error in Al-Bayati's review of Louie's condition. Under these circumstances, no new trial was required in the interests of justice under K.S.A. 22-3501, and the district judge did not abuse his discretion in denying Rodriguez' motion.

## CONCLUSION

Defendant Jaime Rodriguez has not demonstrated the existence of any error requiring reversal of his felony-murder conviction. The judgment of the district court is therefore affirmed.