IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,224

STATE OF KANSAS,
*Appellee*,

v.

GREGORY MARK GEORGE, JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

After a district court appoints counsel and conducts a nonevidentiary hearing, its denial of a K.S.A. 2015 Supp. 21-2512 petition for DNA testing presents a question of law over which an appellate court exercises unlimited review.

2.

In evaluating a petition for DNA testing pursuant to K.S.A. 2015 Supp. 21-2512, the district court is charged with the responsibility of assessing the exculpatory and cumulative nature of each item proposed to be tested.

3.

Exculpatory evidence need not be exonerating but only needs to tend to disprove a fact at issue material to guilt.

4.

Noncumulative evidence is the converse of cumulative evidence, i.e., not of the same kind and character or not tending to prove the same thing.

1

Review of the judgment of the Court of Appeals in an unpublished decision filed October 30, 2015. Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed June 8, 2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Christina M. Kerls*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Todd G. Thompson*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The decision of the court was delivered by

NUSS, C.J.:  Gregory Mark George, Jr. appeals the denial of his petition for post-conviction DNA testing filed under K.S.A. 2015 Supp. 21-2512. The majority of a panel of the Court of Appeals affirmed the district court's denial.

George argues both lower courts erred because the testing of hair from the crime scene may have indeed produced exculpatory evidence that was "noncumulative" as required by the statute. We agree with George. So we reverse and remand to the district court for further proceedings.

FACTS AND PROCEDURAL HISTORY

George was convicted by a jury of kidnapping, rape, aggravated robbery, and aggravated intimidation of a witness or victim. The basic facts as established in the direct appeal of his convictions include:

"R.L., a clerk at a Lansing convenience store, testified that on December 21, 2004, George entered the store, told R.L. he 'wanted the money,' and showed her a gun. R.L. handed George cash from the register, which he stuffed in his pockets. Then,

2

holding the gun at the back of her head, George pushed R.L. into the storeroom at the back of the store and raped her.

"George left after he heard a bell, signaling that a customer had entered the front of the store. Before leaving, however, George told R.L. that he would kill her and her children if she told police about the incident. R.L. remained in the storeroom until she was found by customers, who contacted police. After police arrived, R.L. was briefly interviewed, then taken to the hospital and examined.

"A few days later, R.L. identified George in a photo identification lineup. She also viewed the video from the store's recording system and recognized George robbing her and forcing her to the storeroom.

"Lansing police officer Anthony Waterman later linked George to a complaint from Amanda Yoho, a clerk at another local convenience store. Officer Waterman asked Yoho to contact him when George next appeared at the store, which she did. Officer Waterman spotted George driving near the store, followed him for a short distance, and then pulled him over and arrested him." *State v. George*, No. 97,679, 2008 WL 4471431, at *1 (Kan. App. 2008) (unpublished opinion).

The record reflects the rape occurred in front of the storeroom's sink near a hot water heater. From the floor near that heater a Lansing police officer collected 10 pieces of hair and fiber evidence which were eventually turned over to the department's evidence custodian. The hair was never tested by the Kansas Bureau of Investigation (KBI). Through use of a rape kit, an examination was performed on R.L. and fluid was collected. This was later identified as seminal fluid, which was also found on R.L.'s pants and underwear.

George's first trial ended in a mistrial. There, the State called the nurse who had administered R.L.'s rape kit, the forensic scientist who processed the evidence once the KBI received it, and the forensic scientist who conducted the DNA testing on the fluids.

3

Per testimony, George's DNA was not found in any of the samples tested from the rape kit or R.L.'s clothing. But testing results of the fluid samples were consistent with R.L.'s boyfriend's DNA.

At the retrial, however, none of these witnesses testified about the DNA evidence. Accordingly, there was no testimony regarding the rape kit or the subsequent DNA testing other than an officer's testimony that he was present in the hospital when the rape kit contents were collected. And the DNA testing results showing consistency with R.L.'s boyfriend were not admitted into evidence. Apparently, this evidence was meant to be replaced by a stipulation that was presented to the jury. But the stipulation is not included in the record on appeal, whether by the document itself or by a transcript reciting its specific contents.

The majority of the evidence on retrial concerned R.L.'s testimony combined with surveillance video and photo lineups. It was upon this evidence that the jury convicted George of kidnapping, rape, aggravated robbery, and aggravated intimidation of a witness or victim. He was sentenced to 722 months' imprisonment, which was later reduced to 663 months. See *State v. George*, No. 97,679, 2010 WL 2502869, at *1 (Kan. App. 2010) (unpublished opinion) (reversing the conviction of kidnapping and remanding the case for resentencing).

On August 26, 2013, George filed a pro se petition for postconviction DNA testing under K.S.A. 2013 Supp. 21-2512. George asked that the collected, but previously untested, hairs be tested against the DNA profile of R.L.'s boyfriend. His petition also requested an evidentiary hearing and the appointment of counsel. In effect, George maintained that he was not the perpetrator.

4

The district court appointed counsel and a preliminary hearing was held to discuss, in part, the petition. During that hearing, George's counsel clarified that they also wanted the hair DNA testing results to be "cross referenced and checked against" an FBI database like CODIS. In their view, this could connect a third party with a criminal record to the scene and further support the claim that R.L. mistakenly identified George as the perpetrator.

In denying George's petition, the district court relied on the legal standard from *State v. Lackey*, 42 Kan. App. 2d 89, 208 P.3d 793 (2009) (*Lackey I*), which had been overruled by *State v. Lackey*, 295 Kan. 816, 286 P.3d 859 (2012) (*Lackey II*), before the district court ruling. Based upon *Lackey I*, the district court concluded that "additional testing would not point to Mr. George's innocence or that he was wrongfully convicted."

George appealed and the Court of Appeals panel split. The majority ruled that while the district court erred in relying on *Lackey I*, the decision to deny still should be affirmed. The majority cited *Lackey II* to conclude that while the hairs could produce exculpatory results, they nevertheless would be cumulative to other record evidence. So testing was not required by K.S.A. 2015 Supp. 21-2512. In deciding the hair testing results would be cumulative evidence, the majority relied on the stipulation after acknowledging that "[d]ue to the parties' failure to cite to the actual stipulation and/or request the addition of the stipulation to the record on appeal, the precise wording is unknown." *State v. George*, No. 112,224, 2015 WL 6622153, at *5 (Kan. App. 2015) (unpublished opinion).

In dissent, Judge Atcheson opined the district court applied too strict of a standard and the case should be remanded for that court to evaluate the request using the correct legal measure. *George*, 2015 WL 6622153, at *10. He also analyzed George's petition, opining like his colleagues, that the hair testing might produce evidence of "at least some

5

limited exculpatory character." But unlike them he believed that such evidence also "would appear to be noncumulative." 2015 WL 6622153, at *10.

We granted George's petition for this court's review. Our jurisdiction is proper under K.S.A. 20-3018(b).

More facts will be added as necessary to the analysis.

ANALYSIS

Issue: *On this record, the district court erred in denying George's petition for DNA testing of hairs found at the crime scene.*

*Standard of review*

After a district court appoints counsel and conducts a nonevidentiary hearing, its denial of a K.S.A. 21-2512 petition for DNA testing presents a question of law over which we exercise unlimited review. *State v. Hernandez*, 303 Kan. 609, 613, 366 P.3d 200 (2016).

*Discussion*

The requirements for postconviction DNA testing are established by K.S.A. 2017 Supp. 21-2512, which provides in relevant part:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for . . . rape . . . may petition the court that entered judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

6

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

. . . .

"(c) The court *shall order* DNA testing pursuant to a petition made under subsection (a) *upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced.*" (Emphases added.)

The State does not challenge that the district court erred in relying upon *Lackey I*'s interpretation of subsection (c) of the statute. So we can proceed to examine the contours of the district court's role and the tests for exculpatory and cumulative evidence explained in *Lackey II* and its progeny, e.g., *State v. Johnson*, 299 Kan. 890, 327 P.3d 421 (2014).

We identified some of the different roles in postconviction DNA testing, including the district court's, in *Lackey II:*

"The district court is charged with the responsibility of assessing the exculpatory and cumulative nature of each item proposed to be tested. In [*State v.*] *Bruner*, we clarified that the statute does not require the prisoner to make specific allegations regarding how the requested testing would produce noncumulative, exculpatory evidence. 277 Kan. at 606. Instead, we opined that *it was the legislature, through the language employed in K.S.A. 21-2512, that had concluded a 'fishing expedition' for DNA evidence is worth conducting in these case*s. 277 Kan. at 606." (Emphasis added.) 295 Kan. at 824.

7

*Exculpatory evidence*

In *Johnson* we summarized what is meant by "exculpatory" evidence under subsection (c) of K.S.A. 21-2512:

"[E]vidence is exculpatory when it simply '"tends to disprove a fact in issue which is material to guilt or punishment."' *Lackey*, 295 Kan. at 823 (quoting *State v. Aikins*, 261 Kan. 346, 382, 932 P.2d 408 [1997] [defining exculpatory in the context of required disclosures under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)], *disapproved on other grounds State v. Warrior*, 294 Kan. 484, 277 P.3d 1111 [2012]). We have similarly emphasized that evidence need not be exonerating to be exculpatory but must only '"*tend* [ ] to establish a criminal defendant's innocence."' (Emphasis added.) 295 Kan. at 823 (quoting Black's Law Dictionary 637 [9th ed. 2009]). And we have 'previously, and rather explicitly, rejected the notion of defining exculpatory evidence under K.S.A. 21-2512(c) as being a function of weighing evidence.' 295 Kan. at 823 (citing *Bruner*, 277 Kan. at 606)." 299 Kan. at 894.

There we also addressed the use of DNA evidence for tending to establish innocence through identity:

"In continuing our analysis, we bear in mind that 'DNA testing is intended to confirm or dispute the identity of individuals involved in or at the scene of a purported crime.' *State v. Smith*, 34 Kan. App. 2d 368, 373, 119 P.3d 679 (2005), *rev. denied* 280 Kan. 990. So DNA evidence may be exculpatory if it *tends to establish innocence based on an individual's identity*." (Emphasis added.) 299 Kan. at 894.

The panel majority in the instant case held that the hairs would be exculpatory when the correct standard was applied. "We are persuaded that if George's DNA was not discovered on hair recovered from the crime scene, the evidence would have some, albeit slight, tendency to show that George was not present at the crime scene. This evidence

8

also would be material especially given George's defense of misidentification." *George*, 2015 WL 6622153, at *5. The dissent's analysis follows a similar path:

> "George argues that the DNA testing would show the hairs did not belong to him, meaning other people had been at the place where the rape occurred and could have been the perpetrator. *As the majority notes, that would seem to be marginally exculpatory, since George denies having had any interaction with the victim.* But it would be of limited evidentiary value. The storage area was accessible to store employees and presumably other people having a business purpose for being there. And the hairs could have been present in the storage area for some time before the crime. *Nonetheless, the DNA testing seems to fit the exculpatory-though-not-exonerating standard the Kansas Supreme Court set out in Lackey.*" (Emphases added.) *George*, 2015 WL 6622153, at *9.

We agree that even if the testing of the hairs found at the spot where the rape occurred only revealed that George's DNA was not present, the results would be exculpatory because they would "tend" to disprove his guilt. At a minimum, they would tend to show he had not been at that spot. *Johnson*, 299 Kan. at 894 ("'DNA testing is intended to confirm or dispute the identity of individuals involved in or at the scene of a purported crime.' [Citation omitted.] So DNA evidence may be exculpatory if it tends to establish innocence based on an individual's identity.").

That this potentially exculpatory evidence may be of very little evidentiary value does not matter at this stage. Once DNA results are obtained, the district court will then make "a 'probabilistic determination about what reasonable, properly instructed jurors would do' with the new evidence in light of the totality of the circumstances." *Lackey II*, 295 Kan. at 824 (citing *Haddock v. State*, 295 Kan. 738, 769, 286 P.3d 837 [2012]). "But the statute does not contemplate that exercise of discretion in determining whether to order the testing in the first instance." *Lackey II*, 295 Kan. at 824. See also *State v. Hernandez*, 303 Kan. 609, 620-21, 366 P.3d 200 (2016) ("The determination of whether

9

there is a substantial question of innocence is not a precursor to ordering the testing in the first instance.").

The concurrence opines it is "simply wrong" to conclude "even if the testing of the hairs found at the spot where the rape occurred only revealed that George's DNA was not present, the results would be exculpatory because . . . [a]t a minimum, they would tend to show he had not been at that spot." But that opinion ignores how substantially Kansas law varies from the jurisdictions of all the cases it cites.  In them the defendant's burden is much higher. Among other things, there the court first must weigh evidence to decide whether DNA testing should be allowed—while a Kansas court only weighs the evidence after the testing results are known. 295 Kan. at 824.

For example, in *State v. Riofta*, 166 Wash. 2d 358, 367-68, 209 P.3d 467 (2009), the statute required the court to order postconviction DNA testing only "when exculpatory results would, *in combination with the other evidence*, raise a reasonable probability the petitioner was not the perpetrator." [Emphasis added.] See also *Moore v. Commonwealth*, 357 S.W.3d 470 (Ky. 2011) (statute required the court to order DNA testing if, among other requirements, "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing and analysis"); *Prible v. State,* 245 S.W.3d 466, 467-68 (Tex. Crim. App. 2008) (under statute, defendant not entitled to DNA testing unless first showed "there is greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results"). By contrast, exculpatory DNA evidence in Kansas need not be exonerating but must only "'*tend*[ ] to establish a criminal defendant's innocence.'" (Emphasis added.) 295 Kan. at 823.

A decision three years after *Prible v. State* by Texas' highest criminal court helps illustrate some of these important differences in the defendant's burden. It also makes the point that a mere absence of the defendant's DNA constitutes exculpatory evidence.

In *Ex parte Gutierrez*, 337 S.W.3d 883 (Tex. Crim. App. 2011), the court examined Texas DNA testing statutes to determine (1) whether reasonable grounds existed for appointment of defense counsel and in turn (2) whether DNA testing must be ordered. It stated:

"An analogy to the Fourth Amendment distinction between 'reasonable suspicion' and 'probable cause' construct may be helpful: Before appointing an attorney, the trial judge needs 'reasonable grounds' to believe that (1) a favorable forensic test is a viable, fair and rational possibility, and (2) such a test could plausibly show that the inmate would not have been convicted. Before ordering testing, the inmate must establish, by a preponderance of the evidence, 'probable cause' that he would not have been convicted if exculpatory DNA results are obtained.

"Alternatively, one could approach the 'reasonable grounds' questions in the opposite direction. The trial judge could simply assume that the result of any proposed DNA testing is *'exculpatory' in the sense that the test will prove that the inmate is not the source of that DNA. That is a 'favorable' or 'exculpatory' test result. But if that 'favorable' or 'exculpatory' finding would not change the probability that the inmate would still have been convicted, then there are no reasonable grounds to appoint an attorney and no justification for ordering any testing*. A 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" (Emphasis added.) 337 S.W. 3d at 892.

In *Riofta*, 166 Wash. 2d 358, the Washington Supreme Court considered the defendant's request for postconviction DNA testing of a white hat found at the crime

scene which, according to the victim, had been worn by the shooter. The hat was later identified as owned by the man whose stolen car had been used at the scene.

The court acknowledged that testing of the hat could result in a "favorable outcome" for defendant, i.e., "the absence of his DNA." 166 Wash. 2d at 370. But after reviewing the facts, the court held this result would be insufficient under the state statute to trigger DNA testing and upheld the trial court's denial of the request.

> "The trial court reasonably concluded the absence of Riofta's DNA would *not likely demonstrate his innocence on a more probable than not basis*. The white hat belonged to the owner of the stolen vehicle and was worn by the shooter for a short time, perhaps only as long as it took to walk over from the curb and fire the gun. Moreover, Riofta's head was shaved. Just as the absence of his fingerprints would not be inconsistent with his guilt (according to the victim, the shooter wore gloves), the absence of his DNA on the white cap would not exclude him as the perpetrator." (Emphasis added.) 166 Wash. 2d at 370.

By contrast, in the instant case there are no facts indicating how the hairs actually arrived on the storeroom floor—or that George had shaved his entire body. Consequently, under Kansas law the absence of his DNA from the hairs would be exculpatory. It tends to suggest he had not been at the spot of the rape and thus did not commit the crime. See 295 Kan. at 823. So *Riofta*—which acknowledged the DNA evidence sought was probative, though limited—is of no comfort to the concurrence. 166 Wash. 2d at 373.

Finally, in *Moore v. Commonwealth*, 357 S.W.3d 470, the appellant argued he should receive a new trial because testing showed "favorable results." i.e., another person's DNA was on some of the clothes worn by the killer. But the Kentucky Supreme Court noted the evidence showed others could easily have worn the clothes:  they did not belong to the appellant, they had been found in a pile of other people's laundry, and it was

12

unlikely any precautions had been taken to prevent this evidence's contamination. 357 S.W.3d at 487-88. So in rejecting appellant's request, the court held,

> "*Favorable results* [needed to vacate capital murder conviction under DNA testing statute], at least in this scenario, *would most likely require that Appellant be excluded as a source of DNA on the clothing, which would then demonstrate that he could not have worn them.* . . . This focus on excluding Appellant, rather than showing the presence of another person's DNA, was proper." (Emphasis added.) 357 S.W.3d at 487.

Similarly, excluding George as a source of DNA on the hairs, i.e., establishing that they were not his, is a result potentially obtainable through testing. Because a rape requires an unwilling victim—indeed often involves a forcible physical encounter—it is not uncommon for hairs (pubic or otherwise) to become detached. So if DNA testing of hairs collected at the spot of the rape show they are not George's, such results would tend to support his claim that he had not been present and therefore did not commit the rape. Accordingly, they would be exculpatory under our caselaw. 295 Kan. at 823.

We reiterate that unlike these other jurisdictions relied upon by the concurrence, the fact this exculpatory evidence may be of very little evidentiary value does not matter at this stage. Because Kansas law does not allow for the weighing of evidence until after DNA test results are obtained, exculpatory by the smallest margin is sufficient. *State v. Hernandez*, 303 Kan. 609, 620-21, 366 P.3d 200 (2016) ("The determination of whether there is a substantial question of innocence is not a precursor to ordering the testing in the first instance.").

13

*Noncumulative evidence*

Since K.S.A. 2015 Supp. 21-2512(c) provides that "[t]he court shall order DNA testing . . . upon a determination that testing may produce noncumulative, exculpatory evidence . . . ," the only remaining dispute is whether the hair testing results would be noncumulative.

We have defined that term's opposite, i.e., cumulative evidence, as "evidence of the same kind to the same point, and whether it is cumulative is to be determined from its kind and character, rather than its effect." *State v. Rodriguez*, 295 Kan. 1146, 1158, 289 P.3d 85 (2012). See also Black's Law Dictionary 463 (10th ed. 2014) ("[Of evidence] tending to prove the same thing <cumulative testimony>").

The panel majority held the hair testing could not produce noncumulative evidence. Although acknowledging the precise wording of the stipulation was unknown, it determined that, "On appeal, the parties agree that the jury had as evidence a stipulation that 'George's DNA was not found on the complaining witness.'" *George*, 2015 WL 6622153, at *5. After citing trial arguments by the State and defense, the majority concluded, "[T]he jury was provided with evidence and argument that George's DNA was not found on R.L. or at the crime scene." 2015 WL 6622153, at *6.

One illustration of the arguments is the State's opening statement, which seems to limit the State's contention to the terms of the stipulation as described by the panel majority. In other words, there simply was no George DNA found on R.L.:

"[T]here is going to be a *stipulation by the parties regarding the rape kit and the evidence sent to the KBI, evidence was sent to the KBI Lab in Topeka. And this did not*

14

*come back to the defendant, it came back to another person,* [B.K.]. And [B.K.] is the fiancé of the victim and the victim will testify that she had voluntary sexual relations with her fiancé the night before this event. And we will go through and explain to you why we believe that occurred that way based upon the evidence." (Emphasis added.)

The defense's opening statement, however, portrays a more expansive interpretation of the stipulation. Although the fluids on R.L. were the only items actually subjected to testing—and they revealed no George DNA—the defense took that to contend there was no DNA evidence of George at any place in the crime scene:

"Now I think what is going to be a very important for you, you're not going to hear the witnesses but the evidence is going to be in the form of a stipulation. *And the parties have so stipulated, there is no DNA match at all to my client to this crime scene. Nothing whatsoever.* And when you take all of this in account . . . *and the fact there is no DNA . . .* you're going to come to the conclusion that this man is not guilty of the crime he is charged with." (Emphasis added.)

The defense's contention in its closing argument is arguably more limited than that in its opening statement:

"Our defense is we weren't there and we didn't do it. . . . You can tell that with the fact there is no DNA *found* that matched [George]. Now there was DNA *found* that matched the young lady's boyfriend or fiancé*,* but there was nothing that matched [George's] or anyone else." (Emphases added.)

Because the majority concluded that the jury received evidence and argument that George's DNA was not found on R.L. or at the crime scene, it reasoned that "hair fibers found on the floor of the crime scene" that were not consistent with George's DNA profile would be cumulative. *George*, 2015 WL

6622153, at \*6. More specifically, the absence of George's DNA on the floor would be "'of the same kind to the same point'" as the absence of George's DNA on the victim. *George*, 2015 WL 6622153, at \*6 (citing *State v. Rodriguez*, 295 Kan. at 1158, for definition of cumulative evidence).

In dissent, Judge Atcheson emphasized that "[n]either the stipulation nor the underlying evidence implicated *someone other than George* as the *rapist*." (Emphasis added.) *George*, 2015 WL 6622153, at \*10. He reasoned that if DNA testing of the hairs identified someone other than either (1) R.L.'s boyfriend (not a rapist) or (2) George, then "that would tend to place a third person at the crime scene." 2015 WL 6622153, at \*10. He acknowledged that person would not necessarily have been there during the crime, but "[s]uch evidence would appear to be noncumulative and of at least some limited exculpatory character." 2015 WL 6622153, at \*10. See *Lackey II*, 295 Kan. 816.

In our analysis of the "noncumulative evidence" issue, we start with the majority's acceptance of the parties' characterization "that the jury had as evidence a stipulation that 'George's DNA was not found on the complaining witness.'" *George*, 2015 WL 6622153, at \*5. As mentioned, from there the majority ultimately concluded that "the jury was provided with *evidence* and argument *that George's DNA was not found . . . at the crime scene.*" (Emphases added.) 2015 WL 6622153, at \*6.

But not finding George's DNA at the crime scene was essentially a jury argument made by defense counsel. It was based upon the apparent stipulation that was limited to R.L.'s body—which counsel expanded to argue "there is no DNA match at all to my client to this crime scene. Nothing whatsoever . . . . [T]here is no DNA." A mere lack of George's DNA in the fluids on R.L.'s body—the only items tested—does not mean, however, that all untested crime scene items likewise do not contain his DNA. Accordingly, that single agreed upon fact regarding R.L.'s body cannot automatically

16

dispose of the general question that the district court must answer when reviewing a petition for DNA testing of the hair, e.g., if those results "may produce noncumulative" evidence. K.S.A. 2017 Supp. 21-2512(c).

As for the next step in our analysis on the noncumulative evidence issue, we agree with the panel's dissent. If the testing results of the hairs found at the point where the rape happened were to indicate the presence of the boyfriend's DNA, then that evidence would be cumulative of the seminal fluids' evidence. (Conversely, if the hairs' testing results indicated the presence of George's DNA, then that evidence clearly would not be exculpatory.) But under the language of K.S.A. 2015 Supp. 21-2512(c), future testing of those hairs "may produce" results indicating the presence of other individuals' DNA. And because such evidence would be the first of that type from the crime scene—especially the rape scene—it necessarily would be noncumulative under the statute. See *Rodriguez*, 295 Kan. at 1158 (whether evidence is cumulative is determined from its kind and character); Black's Law Dictionary 463 (10th ed. 2014) (cumulative evidence is "tending to prove the same thing").

Such evidence in turn would support George's defense that some other person—significantly, perhaps someone now identified—committed the crimes. In short, for K.S.A. 2015 Supp. 21-2512(c) purposes, there is a difference between failing to find George's DNA, which only suggests he did not commit the crimes—and actually finding someone else's DNA, which suggests that person committed the crimes instead. Because the issue was not raised in George's appeal, we do not address the propriety of his prior request that the district court cross-reference the DNA testing results and check them against an FBI database like CODIS.

While we acknowledge that the hairs found at the rape scene were not necessarily detached during the crime, it is important to recall what we said in *Lackey II*,

"[T]he statute does not require the prisoner to make specific allegations regarding how the requested testing would produce noncumulative, exculpatory evidence. 277 Kan. at 606. Instead, . . . it was the legislature, through the language employed in K.S.A. 21-2512, that had concluded a 'fishing expedition' for DNA evidence is worth conducting in these cases. 277 Kan. at 606." 295 Kan. at 824.

In sum, the case is reversed and remanded to the district court for it to:

1. examine the actual stipulation from retrial. If it essentially provided that no person's DNA besides R.L.'s boyfriend's was present at the crime scene, then DNA testing of the hair will be unnecessary because the results would be cumulative. But if the stipulation does not so provide, then apply the legal standards identified in this decision to George's petition; and

2. make the necessary determinations under K.S.A. 2015 Supp. 21-2512. See *Lackey II*, 295 Kan. at 824 ("The district court is charged with the responsibility of assessing the exculpatory and cumulative nature of each item proposed to be tested.").

The decision of the Court of Appeals majority is reversed. The decision of the district court is reversed, and the case is remanded for proceedings consistent with this decision.

\* \* \*

BILES, J., concurs in the result.

18

* * *

STEGALL, J., concurring:  I write separately to point out a small but significant error in the reasoning deployed by today's majority. The suggestion is made that "even if the testing of the hairs found at the spot where the rape occurred only revealed that George's DNA was not present, the results would be exculpatory because . . . [a]t a minimum, they would tend to show he had not been at that spot." Slip op. at 9. The Court of Appeals majority made the same mistake when it opined "if George's DNA was not discovered on hair recovered" this would have some "tendency to show that George was not present at the crime scene." *State v. George*, No. 112,224, 2015 WL 6622153, at *5 (Kan. App. 2015) (unpublished opinion).

Both of these statements are simply wrong. The fact that sometime in the past one person was in a place—especially a public place such as where the rape occurred here—has nothing at all to do with whether another person was also in that place sometime in the past. The two facts are completely unrelated—the proof of one has zero tendency to prove or disprove the other. The majority's overbroad statement here is likely to lead to confusion in the future and improperly expands the field of supposedly exculpatory evidence.

Numerous courts have made this elementary observation. For example, in *State v. Riofta*, 166 Wash. 2d 358, 209 P.3d 467 (2009), the Washington Supreme Court, sitting en banc, considered whether a third person's DNA on a white hat worn by the perpetrator of a murder might tend to prove the defendant had not been wearing the white hat. The problem for the defendant was that the white hat had been stolen from its owner some time before the killing. 166 Wash. 2d at 370. Thus, the "presence of a third person's DNA on the white hat" could not prove the defendant had not also worn the white hat because "[a]ny of a number of people besides the shooter could have worn the white hat at some

19

time after [it] was stolen." 166 Wash. 2d at 370; see also *Moore v. Commonwealth*, 357 S.W.3d 470, 487 (Ky. 2011) (holding that DNA evidence proving that a third party had at some point worn the clothes worn by the perpetrator of a crime had no relevance to proving or disproving whether the defendant had also worn the clothing because the clothing "did not belong to [defendant] originally" and the clothes "had been left in a pile of other people's laundry"); *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (holding that "without more" the mere "presence of another person's DNA at the crime scene would not constitute affirmative evidence of the [defendant's] innocence").

The majority criticizes my citation of these examples by reciting "how substantially Kansas law varies from the jurisdictions of all the cases [cited]." Slip op. at 10. The majority opinion correctly observes that other states place a higher evidentiary burden on defendants hoping to demonstrate that subsequent DNA testing will be exculpatory. But this distinction is irrelevant for my purposes. The majority simply misses the narrow point of contention at issue—whether the proved presence of one person in a public place has any tendency whatsoever to prove the absence of another person at that place.

The reason the DNA testing in this case has an ever-so-slight tendency to demonstrate George is not the perpetrator of this crime is *not* because evidence of a third person's presence tends to show that George was not there. Rather, the reason is that the evidence—i.e., the only hairs found in the entire large, publicly accessible storeroom which also just happened to have been found at the precise location of the crime—creates the possibility of doubt as to the identity of the perpetrator. It is identity that matters in these cases, not (as the majority would have it) presence at the scene. See *State v. Johnson*, 299 Kan. 890, 894, 327 P.3d 421 (2014) ("'DNA testing is intended to confirm or dispute the identity of individuals involved in or at the scene of a purported crime.'

20

[Citation omitted.] So DNA evidence may be exculpatory if it tends to establish innocence based on an individual's identity.").

It is for this reason, and this reason alone, that I concur.