NOT DESIGNATED FOR PUBLICATION

No. 120,770

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COLIN R. SCHMIDT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed May 29, 2020. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., WARNER, J., and ROBERT J. WONNELL, District Judge, assigned.

PER CURIAM: After he sold methamphetamine to an undercover Wichita police officer on two occasions, the State charged Colin Schmidt with two counts of distribution of methamphetamine, each charge corresponding to the separate controlled buys. A jury convicted him of one count of distribution of methamphetamine and acquitted him of the other. On appeal, Schmidt claims his case should be remanded for a new trial due to the admission of a partially redacted mugshot photograph and the district court's denial of his pretrial motion for new counsel. We disagree and affirm.

Factual and Procedural Background

The State charged Schmidt with two counts of distribution of methamphetamine after he sold about a 1/4 pound of the drug to an undercover Wichita detective. The charges were identical, stemming from two controlled buys that occurred one week apart.

A confidential informant told the Wichita detective she could help him set up a drug purchase with a local dealer. The detective agreed and the informant set up the deal, which was to occur at the informant's house in Wichita. Before the arranged meeting, the detective familiarized himself with several photographs to help identify the seller; some of the photographs were mugshots and some were taken from Facebook. On the day of the appointed meeting, the man from the photographs—later identified as Schmidt—arrived at the informant's house. Schmidt and the detective exchanged 2 ounces of methamphetamine in a Styrofoam cup for cash. The detective used a body wire to record the interaction; this recording would later be played for the jury.

Later that week, the detective set up a second controlled buy with Schmidt in a parking lot. Schmidt arrived on a motorbike and offered to sell the detective up to 4 ounces of methamphetamine, but the detective only purchased 2. Once again, the detective wore a body wire throughout the transaction. Not long after, the State filed the distribution charges against Schmidt.

Before trial, Schmidt filed a "Motion for Ineffective Counsel" alleging his attorney, Jama Mitchell—who represented him on a number of concurrent cases—was not giving him all of the discovery materials he requested. On the morning of the trial, the court held a hearing on Schmidt's motion before beginning jury selection. Schmidt claimed Mitchell was withholding evidence, had failed to secure a promised bond modification, and had not prepared for trial; he indicated he did not believe she was representing his best interests. Mitchell denied Schmidt's allegations, stating the only

information she had withheld concerned personal information about witnesses. Mitchell further explained that she and Schmidt had formed a strategy for trial and she did not think the motions he wanted to file were necessary. For its part, the State asked the court to deny his motion and any continuances. The court denied Schmidt's motion, explaining he had failed to show justifiable dissatisfaction with Mitchell's representation.

Before the jury was sworn in, Schmidt objected to the State's plan to introduce his mugshots as evidence. He contended the mugshots, which the State intended to offer to show how the detective identified Schmidt during their meetings, were unduly prejudicial, and the State could simply use the Facebook photos the detective referenced instead. In the alternative, Schmidt's attorney suggested the State could redact portions of the mugshots if those redactions would prevent the jury from recognizing the photographs as mugshots. The court determined the two side-view mugshots should be removed but the front-view photograph was admissible:

> "I will order that the side views be removed. I tend to agree that they look like mugshots. The straight-on view, frankly, it looks like a driver's license photo. The demographic information, race, hair, eyes, sex, height, weight and such is information that would be found on a driver's license. The others are not.
>
> "So the name on the top, the frontal photo of his face, the demographic information will remain, but I will ask the State before this is proffered to redact the side views."

Ultimately, the jury found Schmidt guilty of the first count of distribution and not guilty on the second. Schmidt was sentenced to 80 months' incarceration with 36 months' postrelease supervision. He appeals.

DISCUSSION

1. *The district court did not err in admitting Schmidt's redacted, front-view mugshot.*

Schmidt contends the trial court erred by admitting the redacted version of his mugshot into evidence, claiming it was highly prejudicial and had limited probative value. We review a trial court's decision to exclude or admit evidence for an abuse of discretion. *State v. Miller*, 308 Kan. 1119, 1166-67, 427 P.3d 907 (2018); *State v. Soto*, 299 Kan. 102, 112, 322 P.3d 334 (2014) (when a party claims an otherwise relevant photograph should have been excluded as unduly prejudicial, appellate courts review for an abuse of discretion). A district court abuses its discretion if (1) no reasonable person would take the view it adopted, (2) the decision is based on an error of law, or (3) the decision is based on an error of fact. *Miller*, 308 Kan. at 1138. Reversal is only required when the erroneous admission of evidence "'is of such a nature as to affect the outcome of the trial and deny substantial justice.'" *State v. Engelhardt*, 280 Kan. 113, 130, 119 P.3d 1148 (2005). Schmidt, as the party challenging the court's evidentiary ruling, bears the burden of proving the abuse of discretion. See *Miller*, 308 Kan. at 1138.

Because Schmidt argues the mugshot was unduly prejudicial and therefore erroneously admitted, we begin by determining whether the redacted mugshot was relevant—i.e., probative and material. See *Soto*, 299 Kan at 112. "Photographic evidence, like other evidence offered at trial, is relevant and generally admissible if the photographs have a reasonable tendency to prove a material fact in the case." *State v. Rodriguez*, 295 Kan. 1146, 1157, 289 P.3d 85 (2012). Evidence is material if "the fact it supports is in dispute or in issue in the case." *Miller*, 308 Kan. at 1167. And evidence is probative if it has any tendency to prove a material fact. 308 Kan. at 1167. But even when evidence is relevant, a trial court is vested with discretion, under K.S.A. 60-445, to exclude it from trial if "its probative value is substantially outweighed by its potential for producing undue prejudice." 308 Kan. at 1167.

4

Here, the State presented evidence that the detective used Schmidt's redacted mugshots—though he did not refer to the photograph as a mugshot at trial—to familiarize himself with Schmidt's appearance before the first controlled buy. The State correctly notes that it was required to prove Schmidt's identity as the individual who sold the methamphetamine to the detective and that this matter was disputed; Schmidt refused to stipulate to the question of identity at trial. On appeal, Schmidt argues that the State could have used the photos from Facebook for this purpose and that the mugshot was "unnecessary." But the fact that the State also had Facebook photographs of Schmidt at its disposal does not alter the redacted mugshot's relevance.

Schmidt's primary argument is that the redacted photograph was unduly prejudicial because it suggested previous criminal activity. See K.S.A. 2019 Supp. 60-455. But the district court, not an appellate court, is charged with the task of weighing the evidence's probative value against its potential prejudice under K.S.A. 60-445; we will only reverse a district court's decision to admit evidence if it abused that discretion. *Soto*, 299 Kan. at 112. The court did not do so here.

We recognize, as Schmidt argues on appeal, that mugshots or line-up photographs can indicate to a jury that the defendant has a criminal history and can therefore be prejudicial as indirect evidence of prior crimes—leading the jury to believe the defendant is a wrongdoer. See *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 (1973). But our review of the record, and particularly the redacted mugshot, shows the district court took sensible, preventative steps to minimize any potentially prejudicial effect the photograph might have had. In its redacted state, the photograph might be recognized as a mugshot, but it also resembles a driver's license photo or other identification. And the picture was never referenced as a mugshot by any attorney or witness at trial.

We note, moreover, that the jury's actions belie Schmidt's arguments concerning the photograph's prejudicial effect. Though the redacted mugshot was admitted into

evidence, the jury nevertheless concluded Schmidt was not guilty of one of the crimes charged. While this information was not available to the court when it ordered the mugshot be redacted, this knowledge undermines the force of Schmidt's arguments concerning that photograph's impact on the jury. The district court did not abuse its discretion in admitting the redacted, front-view mugshot.

2. *The district court did not err in denying Schmidt's motion to substitute counsel on the eve of trial.*

Schmidt also argues the district court committed reversible error when it denied his pretrial motion to appoint new counsel. As with Schmidt's evidentiary claims, we review a district court's decision to deny a criminal defendant's request to appoint new counsel for an abuse of discretion; the defendant bears the burden to prove the trial court abused its discretion. *State v. Brown*, 305 Kan. 413, 423-24, 382 P.3d 852 (2016). Our Kansas Supreme Court has on several occasions noted that "'as long as the trial court has a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel.'" 305 Kan. at 425; *State v. Sappington*, 285 Kan. 176, 196, 169 P.3d 1107 (2007).

The Sixth Amendment's right to counsel is not absolute and does not guarantee a criminal defendant the right to choose the attorney appointed to represent him. *State v. Pfannenstiel*, 302 Kan. 747, 759, 357 P.3d 877 (2015). When a defendant files a motion requesting new counsel, he or she is required to show "'justifiable dissatisfaction'" with appointed counsel. 302 Kan. at 759 (quoting *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 [2014]). Justifiable dissatisfaction may be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. *Pfannenstiel*, 302 Kan. at 759-60.

On the morning of Schmidt's trial, the court heard argument on his motion for new counsel. Schmidt voiced his concerns that his attorney was withholding evidence, had promised bond modifications that did not come to fruition, failed to file any motions on his behalf, and had not developed a trial strategy or consulted with him about potential defenses. Schmidt's attorney stated that she had not withheld any evidence and that she had discussed her trial strategy with Schmidt. The court denied Schmidt's motion, finding he had not demonstrated justifiable dissatisfaction with his attorney's representation.

On appeal, Schmidt points to his discovery disagreement with counsel and contends there was a lack of trust between them that undermined their relationship. He adds that his counsel failed to prepare for trial—or at least that Schmidt felt unprepared for trial and did not think he had a fair chance of providing a meritorious defense. Schmidt asserts that his lack of trust and confidence in his attorney warranted the appointment of new counsel and rendered the district court's failure to do so an abuse of discretion. We disagree.

Rather, Schmidt's claims are not supported by the record. Even if he was unhappy with his attorney when she failed to provide him with personal information relating to the State's witnesses, there is nothing to suggest this disagreement affected the quality of representation he received. Indeed, Schmidt has not pointed to anything in the record showing that his attorney failed to advocate on his behalf or provided less than adequate representation. In fact, Schmidt's attorney successfully argued that the jury should not convict him of one of the two crimes charged.

The district court did not abuse its discretion in denying Schmidt's motion to substitute counsel.

Affirmed.