NOT DESIGNATED FOR PUBLICATION

No.126,399

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC JOSEPH MCCLURE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Chase District Court; LAURA MISER, judge. Submitted without oral argument. Opinion filed February 27, 2026. Affirmed.

*Hope E. Faflick Reynolds,* of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers,* assistant solicitor general, and *Kris W. Kobach,* attorney general, for appellee.


Before HURST, P.J., ATCHESON and ISHERWOOD, JJ.


HURST, J.: Law enforcement officers found Eric Joseph McClure face down in a shallow creek near a highway where the victim was shot while a passenger in a vehicle on that same roadway. After finding McClure's gun in the area, officers deduced that McClure shot at the moving vehicle causing damage to the vehicle and injuring the victim. The State charged McClure with knowing aggravated battery and criminal possession of a firearm and the jury convicted him of both charges. On appeal, McClure challenges both convictions.

1

McClure contends the district court committed reversible error by not also instructing the jury on the lesser included offense of reckless aggravated battery and that the statute underlying his criminal possession of a firearm conviction is unconstitutional. This court finds McClure's constitutional claim unpreserved and declines to address it. The majority also finds that McClure cannot show reversible error from the district court's failure to provide a reckless aggravated battery jury instruction. Accordingly, McClure is not entitled to any relief sought and his convictions are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted McClure of aggravated battery and criminal possession of a firearm after an incident on the morning of May 13, 2022, where he shot a gun toward a passenger vehicle driving down the highway and injured one of its occupants.

*The State's evidence*

At trial, one of the witnesses testified that he was driving three coworkers westbound on K-150 from Emporia toward Marion at about 6:10 a.m. when he saw a vehicle, later identified as McClure's, pulled over on the side of the road. As they drove by, the driver heard a loud noise and believed he had struck an animal with his car. Shortly thereafter, the coworker sitting in the back seat passenger side of the car said that something had hit him on the side of his body. After pulling over, the driver saw a hole in the back door and a hole in the plastic fender of his vehicle. He then opened the vehicle door and saw blood coming from the side of the victim's hip.

All three passengers in the vehicle testified to the events. The victim, who was asleep at the time, testified that he awoke to the sound of something hitting the car and then felt pain in the right side of his hip. He did not see who shot him. Another passenger testified that he was asleep in the front passenger seat when he awoke to what felt like the

vehicle hit something. That passenger also saw blood on the victim's shirt and the hole in his back. The final passenger testified similarly—that he woke up thinking the vehicle had hit an animal and that the vehicle pulled over when the victim said something had hit him.

Kansas Highway Patrol (KHP) Trooper Eric Hodges, the first law enforcement officer on the scene, testified that he saw a dark SUV parked on the north shoulder of the road facing westbound about a half mile east of where the victim's vehicle pulled over. At trial, he identified the abandoned vehicle as the black Ford Explorer pictured in State's Exhibit Number 6. Trooper Hodges testified that he interviewed the occupants of the victim's vehicle, who stated they heard the loud noise—which they now agreed was a gunshot—when they passed the abandoned SUV on the side of the road. Upon approaching the black Explorer, Trooper Hodges noticed a bullet hole through the driver's side window.

Trooper Hodges testified that he searched the area for the shooter and eventually called for a K-9 trooper to assist, fearing someone was on the loose with a firearm. The K-9 led the troopers to a barbed wire fence with black fabric and a thread of denim jeans stuck to it, which suggested that someone had gone over the fence there. After searching the field south of the wire, the troopers came upon a man—later identified as McClure—face down in a shallow creek about two-tenths of a mile to the southwest of the road. Trooper Hodges testified that McClure was nonresponsive but breathing. McClure was unable to communicate and made only "guttural noises" with "agonal . . . very difficult breathing, . . . gasping for air almost." Believing McClure to be "highly impaired," the troopers sat him upright, monitored his breathing, and alerted EMS to their location.

Trooper Hodges testified that by this point, they learned the abandoned SUV was registered to McClure. Upon inspection, Trooper Hodges found that the vehicle was missing the front driver's side tire and had only a rim. He testified that the broken tire was

3

located about a quarter mile "west of the U-50/K-150 junction" and about a mile and a half behind where the SUV was abandoned. He stated that in his experience, someone might drive on their rim after losing a tire if they are trying to get to a safer location to change their tire or if they are impaired and fail to realize the issue.

After learning McClure had been located, Lieutenant Trooper Chad Rust and a sheriff confirmed that no other people were in the area. Lieutenant Rust identified McClure as the person he saw sitting in the creek that day. Lieutenant Rust testified that based on McClure's "babbling," lack of coherency, and inconsistent consciousness, he believed it was a good idea to get Narcan in case McClure needed to be revived from overdose. Once they arrived on the scene, EMS administered Narcan.

Lieutenant Rust testified that he eventually located a gun in a shallow creek approximately 20 yards from where McClure was found. He identified the gun in State's Exhibit 22 as the one he located and described it as a black 9mm handgun with a flashlight on it. He explained that the driver's side window glass of McClure's SUV had a bullet hole in it and that he saw what looked like a 9mm shell casing near the vehicle.

Cody Goforth, an Assistant Special Agent in charge of the Crime Scene Response Team for the KBI, testified that he collected a bullet lodged in the plastic trim at the passenger side rear tire area of the SUV. He also collected a fired cartridge case found outside on the ground by the driver's door of McClure's vehicle. After describing the collection of the gun from the scene, Agent Goforth testified it was most likely the firearm used in the shooting. He testified that the weapon was a single-action firearm, which traditionally allowed an individual to fire faster than a double-action firearm. He also testified that he believed the bullet was likely fired from inside McClure's SUV towards the outside of the window. Based on the lack of glass shards inside or outside of McClure's vehicle, Agent Goforth believed the bullet hole was not made in the location

4

where the vehicle was abandoned. He also described the bullet holes in the victim's SUV as six to eight inches apart.

The State called other KBI officials who testified about the processing of the firearm, its functionality, and comparison of the bullets at the scene and the test-fired bullets. The State's final witness, Todd Leeds, a special agent at the KBI, testified about shooting a 9mm firearm. Agent Leeds testified that it would take him "one second or less" to fire two rounds from such a pistol and that the distance between the bullet holes in the SUV was consistent with a single shooter.

*The jury instructions*

After the State rested its case, the court held a jury instruction conference where the defense counsel requested the court include a jury instruction for the lesser offense of aggravated battery. That instruction would have allowed the jury to have found McClure guilty of causing "bodily harm" to the victim rather than "great bodily harm," which carried a lower penalty. The court confirmed that the parties only intended to request one lesser included instruction and not others:

> "At this time, I would note that I did receive an additional submission from [McClure's counsel] requesting a lesser included for the aggravated battery charge. He is requesting a lesser included of the offense of, '[t]he defendant knowingly causing bodily harm to the victim.' And that is your only lesser included request; is that right, [Counsel]?"

McClure's counsel confirmed that "bodily harm" was the only requested lesser included jury instruction: "It is, Your Honor. I don't believe anything else would apply." After hearing arguments from counsel, the court granted McClure's request to include the instruction.

After additional discussion, the court again asked whether counsel wanted any other jury instructions: "Is there any other instructions that the parties request . . . that is not included in your packet?" Both parties responded in the negative.

*The defense*

The defense presented no evidence in its case-in-chief. During its closing argument, the State argued that the harm to the victim constituted great bodily harm, that McClure possessed the gun recovered from the scene, and that he knowingly committed aggravated battery. The prosecutor explained McClure's knowing conduct as follows:

> "A defendant, as the Court has instructed you, acts knowingly when the defendant is aware that his conduct is reasonably certain to cause the result complained about by the State. Now, if you shoot a gun into an occupied car, we would ask you to consider whether or not that is not knowing the likely result. A car that drives down a road and you shoot into it twice. That's for you to decide."

The defense closing focused on McClure's impairment negating his ability to commit the acts alleged—that is, firing a gun at a moving vehicle. Defense counsel recited the evidence of impairment, which included McClure driving for two miles on the tire rim, McClure's state while lying in the ditch, and the use of Narcan to treat a possible narcotic overdose. Given that the two bullet holes in the victim's SUV were only "three inches apart, maybe six by diagonal, and side by side, three inches," defense counsel argued McClure would have had to pull the gun's trigger in about 1/480th of a second.

According to defense counsel, "it just doesn't make sense" that McClure—at his level of impairment and "with unknown qualifications with a firearm"—could have shot all the rounds that hit the car and the victim. He conceded that the State "demonstrated clearly, concisely, without any question . . . that the gun that Mr. McClure purchased shot a bullet . . . into the wheel and no one was harmed." However, counsel explained, as to

6

the other bullet that went into the victim's hip, "We don't know where that came from. . . . And if you're looking for me for answers, I don't have them." Defense counsel reiterated that despite lots of effort to find the associated shell casings, the State failed to show that McClure fired the shot that hit the victim:

> "Certainly the bullet caused him harm and no question that a gun is a deadly weapon, but what evidence is there, conclusive evidence, that that was the gun that Mr. McClure purchased and used? Lots of explanations. That bullet casing could be anywhere. Lots of people there. A couple of dogs there. Lots of effort to find the bullet casings. Zero evidence. Lots of explanations."

The defense also argued that the victim's wound amounted to something less than great bodily harm.

Finally, despite conceding that McClure was a convicted felon at the time he possessed the gun, defense counsel claimed there was no evidence the sentencing court told McClure "not to possess a gun," which meant that McClure cannot have "acted knowingly" with regard to his felon in possession charge. In rebuttal, the State summarized the defense's theory as "Some Other Guy Did It" but emphasized the lack of evidence of another person's presence at the scene.

The jury ultimately rejected the defense's arguments and found McClure guilty of knowing aggravated battery resulting in great bodily harm and criminal possession of a firearm. The district court sentenced McClure to 68 months in prison. McClure appeals.

DISCUSSION

On appeal, McClure claims that the district court committed reversible error by not instructing the jury on the lesser included offense of reckless aggravated battery and that the statute underlying his conviction for criminal possession of a firearm violates the

7

Kansas Constitution, making his conviction unconstitutional. Accordingly, McClure seeks reversal of both convictions.

## I.  FAILURE TO GIVE THE RECKLESS AGGRAVATED BATTERY JURY INSTRUCTION

McClure argues that the district court erred by failing to instruct the jury on reckless aggravated battery. The jury instructions included one for aggravated battery causing great bodily harm and one for the lesser included—aggravated battery causing bodily harm. This meant the jury was permitted to convict McClure of the lesser offense if it did not find that the victim suffered *great bodily harm* but merely bodily harm.

The instructions included an explanation of how the jury should handle the two instructions:  "If you do not agree that the defendant is guilty of Aggravated Battery, great bodily harm, you should then consider the lesser included offense of Aggravated Battery, bodily harm with a deadly weapon." Both aggravated battery jury instructions required the State to show that McClure acted knowingly in that "the defendant knowingly caused great bodily harm to [the victim] with a deadly weapon," or "the defendant knowingly caused bodily harm to [the victim] with a deadly weapon." The instructions also included a definition for knowing conduct: "The State must prove that the defendant committed the crime of aggravated battery knowingly. A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the State."

McClure's sole claim regarding the jury instructions is that the district court committed reversible error by failing to give an additional—but not requested—instruction for *reckless* aggravated battery. When reviewing a claim of error related to a jury instruction, this court follows a three-step process to determine whether:  (1) there is

appellate jurisdiction; (2) error occurred; and (3) any identified errors require reversal. *State v. Holley*, 313 Kan. 249, 253-54, 485 P.3d. 614 (2021).

The first jurisdiction step concerns whether the defendant preserved the claim for appeal and ultimately impacts the standard applied in step three. 313 Kan. at 254. The failure to request the jury instruction does not preclude appellate review—but impacts the reversibility standard. See *State v. Rodriguez*, 295 Kan. 1146, Syl. ¶ 3, 289 P.3d 85 (2012) ("When a defendant does not seek the inclusion of a lesser included offense instruction at trial, that failure does not prevent appellate review if the error is clearly erroneous."). The parties agree that because the defendant did not request a jury instruction for reckless aggravated battery, this court reviews the claim for clear error in step three. K.S.A. 22-3414(3). That resolves step one, appellate jurisdiction, and the standard for determining reversibility at step three.

At the second step, in determining whether an error occurred, the appellate court considers whether the subject instruction was legally and factually appropriate, exercising unlimited review. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). The legal and factual appropriateness of jury instructions is discussed more below.

At step three, because McClure failed to request the jury instruction at issue, any error in not providing the instruction is reversible only when " the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 22-3414(3). Under the clear error standard, this court will only reverse if an error occurred *and* it is "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 307 Kan. at 318. As the party claiming clear error, McClure has the burden to show both error and prejudice. *State v. Mendez*, 319 Kan. 718, 727-28, 559 P.3d 792 (2024).

9

A. *The legal and factual appropriateness of the reckless aggravated battery jury instruction*

In determining whether the court erred by not including a jury instruction for reckless aggravated battery, this court must determine if the instruction was legally and factually appropriate. In general, it is legally appropriate to give a jury instruction for a lesser included offense—an offense that is a lesser degree of the same crime. *State v. Phillips*, 312 Kan. 643, 668, 479 P.3d 176 (2021). The State concedes that the instruction on reckless aggravated battery was legally appropriate as it is a lesser included offense of the charged crime of knowing aggravated battery. The State is correct. See K.S.A. 21-5109(b)(1) (defining lesser included crimes); K.S.A. 21-5413(b) (defining aggravated battery); K.S.A. 21-5413(b)(2)(A) (defining reckless aggravated battery). Therefore, the instruction for reckless aggravated battery was legally appropriate.

Having determined the challenged instruction is legally appropriate, the factual appropriateness is a more difficult question. "To determine whether a lesser included offense instruction is factually appropriate, a court must consider whether there is some evidence, viewed in a light most favorable to the defendant, emanating from whatever source and proffered by whichever party, that would reasonably justify the defendant's conviction for that lesser included crime." *State v. Lowe*, 317 Kan. 713, Syl. ¶ 1, 718, 538 P.3d 1094 (2023); see also K.S.A. 22-3414(3) ("In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime as provided in subsection (b) of K.S.A. 21-5109, and amendments thereto, the judge shall instruct the jury as to the crime charged and any such lesser included crime."). The defendant need not show the evidence was more likely to support the lesser offense, but merely whether the evidence could reasonably justify a conviction of the lesser offense.

The difference between knowingly and recklessly committing aggravated battery is the culpable mental state. A conviction for reckless aggravated battery requires that the

jury find the defendant "consciously disregard[ed] a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j). A person acts knowingly with respect to the result of their conduct when they are "aware that [their] conduct is reasonably certain to cause the result." K.S.A. 21-5202(i). Related to an aggravated battery offense, a person acts knowingly if they "acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action." *State v. Hobbs*, 301 Kan. 203, 211, 340 P.3d 1179 (2015). Thus, "the primary difference between knowing aggravated battery and reckless aggravated battery would be the defendant's degree of awareness that their actions will cause some degree of bodily harm." *State v. Couch*, 317 Kan. 566, 594, 533 P.3d 630 (2023).

McClure contends that the evidence of his intoxication brought his culpable mental state—his level of awareness as to the result of his conduct—into question. According to McClure, the evidence would support a conviction for reckless aggravated battery.

Aggravated battery is more than a general intent offense. This means that the State was required to not only show that McClure shot the victim, but also that McClure knew when he fired the shot that any great bodily harm of the victim was reasonably certain to result from his actions. See *Hobbs*, 301 Kan. at 211-213. Therefore, McClure argues that his intoxication meant he did not form the requisite culpable mental state, or mens rea, necessary to knowingly—rather than recklessly—cause great bodily harm. See K.S.A. 21-5205(b) (voluntary intoxication can be considered in determining a necessary intent or state of mind). Although voluntary intoxication can be considered when determining whether a defendant possessed a culpable state of mind and can be evidence of reckless conduct, mere evidence of intoxication does not prove reckless conduct. There must be some evidence of recklessness or demonstration that the intoxication negated or

11

undermined the requisite mental state at the time of the crime. See, e.g., *State v. Bobian*, 321 Kan. 169, 176, 574 P.3d 385 (2025).

The evidence supporting McClure's inebriated state includes that after the shooting: he was found face down in a ditch of water; he exhibited intermittent consciousness; and he was babbling incoherently and making guttural noises. The first officers at the scene considered whether they would need to administer Narcan—a medication used to prevent narcotic overdose—and the emergency responders eventually did. There is little doubt that McClure was intoxicated from some substance at the time he was located.

The State notes that under the standard, the reckless instruction is "likely also factually appropriate," but does not fully concede the point because "no actual evidence suggested a reckless intent." McClure's inebriation when he was found, according to the State, does not *conclusively* establish that he was inebriated when he fired the shots or that he had a reckless mental state. Although the evidence of intoxication when McClure was found does not prove he was intoxicated—or the degree of intoxication—at the time he fired the gun, given the timeframe, it could be reasonably inferred that he was likely at least somewhat intoxicated when he fired the weapon.

For the jury instruction to be factually appropriate, the evidence need not conclusively—or even overwhelmingly—show McClure acted recklessly. There must merely be "some evidence which would reasonably justify a conviction" for reckless aggravated battery. See K.S.A. 22-3414(3); *Rodriguez*, 295 Kan. at 1153. In other words, "District courts have a duty to issue instructions on any lesser included offense established by the evidence, even if the evidence is weak or inconclusive." *State v. Nelson*, 291 Kan. 475, 480, 243 P.3d 343 (2010). Moreover, even though McClure's defense did not attempt to negate the required mental state—but instead asserted an alternative shooter theory—that does not obviate the court's responsibility to include the

12

jury instruction. "An instruction on a lesser included offense is not foreclosed because it is inconsistent with either the evidence presented by the defense or the theory advanced by the defense. A defendant is entitled to inconsistent defenses. [Citations omitted.]" *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101 (2016).

Although there may be sufficient evidence that would reasonably justify a conviction for reckless aggravated battery—this court need not make that determination. Given the evidence presented, this court need not definitely determine whether the district court erred in not providing the jury instruction because McClure cannot demonstrate prejudice from the failure as explained below.

B. *Prejudice*

At step three, even if the district court erred by failing to instruct the jury on reckless aggravated battery, that error is only reversible if McClure can demonstrate he was prejudiced by that failure. While the district court has an independent duty to instruct the jury on all legally and factually appropriate lesser included offenses, the reversibility of a conviction for its failure to do so is heavily impacted by whether the defendant requested the instruction at trial. While K.S.A. 22-3414(3) grants an exception to the preservation rule permitting a defendant to seek redress when they failed to object at trial to the inclusion or exclusion of a jury instruction resulting in error—it only permits reversal on a showing of clear error. See *Williams*, 295 Kan. at 512. Having no request for the instruction below—this court will only reverse if it is firmly convinced that the jury would have reached a different result had the error not occurred. *McLinn*, 307 Kan. at 326. McClure has the burden to establish the prejudice necessary for reversal. See *Williams*, 295 Kan. 506, Syl. ¶ 5.

In determining whether it is firmly convinced the jury would have reached a different result, it is important to review the evidence supporting the charged offense and

13

lesser included offense. The evidence suggests that McClure popped a tire, drove more than a mile until it was down to the rim, pulled over, and shot through the window of his own vehicle at an unknown SUV driving down the highway. After that, McClure evidently left his car, traversed a barbed wire fence, and eventually laid face down in a ditch with standing water. The evidence of his impairment at the time officers found him is undisputed. Given the evidence of impairment, a reasonable juror could have found that McClure did not *knowingly* cause great bodily harm to the victim but that his actions were reckless.

There is, however, also evidence of knowing conduct because McClure successfully drove to the location, even after suffering a flat tire, shot multiple times in the direction of traffic on a highway using a flashlight to aide his sight, and then fled the scene and traversed a barbed wire fence to elude detection. Moreover, McClure did not present evidence to negate his mental state but merely asserted there was insufficient evidence that he was the shooter (some other dude did it). That defense does not support a conviction for reckless—rather than intentional—aggravated battery but in fact undermines it.

Rather than negate McClure's culpable mental state, the defense questioned his physical ability to fire the gun given his inebriated state. Defense counsel questioned witnesses extensively on the person's ability to pull a trigger fast enough to fire bullets landing mere inches apart on an SUV traveling at about 60 miles per hour. The defense suggested that an intoxicated person would struggle to fire the gun accurately and quickly enough to fire two bullets at the moving SUV. Therefore, if the jury rejected the contention that McClure was too intoxicated to perform the physical act of firing the weapon—then the jury was left to conclude that McClure had enough faculties to successfully complete the task.

14

While the inconsistent defense does not prevent the inclusion of an otherwise legally and factually appropriate jury instruction—it logically undermines this court's firm confidence that the jury would have reached a different result had the instruction been included. The jury simply had no competing narrative of recklessness that firmly convinces this court the outcome would have changed with the additional instruction. See, e.g., *State v. Perez-Medina*, 310 Kan. at 525, 538, 448 P.3d 446 (2019) (finding no evidence to support a reckless aggravated battery instruction).

There was no evidence that McClure accidentally fired the gun in the direction of occupied cars traveling on the highway, or that his mental state made him unaware that people would be in the cars that he shot at, or that he thought he was shooting at birds. In closing, the defense counsel focused on the "some other dude did it" defense—and did not leave open the possibility that McClure was so inebriated he did not realize he did it.

While a panel of this court found reversible error in a failure to give a lesser included instruction in an aggravated battery case and explained that it was "the function of a jury to decide whether the actions were intentional or reckless," that case is clearly distinguishable. *State v. Ochoa*, 20 Kan. App. 2d 1014, 1021, 895 P.2d 198 (1995), *disapproved on other grounds by State v. Valentine*, 260 Kan 431, 921 P.2d 770 (1996). In *Ochoa*, evidence was presented that the defendant was the shooter and that he *either* intentionally or recklessly inflicted harm upon the victims. Ochoa "testified that he did not intend to shoot anyone and that he shot his pistol in the air merely to frighten those advancing on his pickup." 20 Kan. App. 2d at 1020-21. That evidence, if the jury believed it, supported a conviction for reckless aggravated battery. See 20 Kan. App. 2d at 1021. Perhaps evidence like that would firmly convince this court that an instruction on reckless aggravated battery would have affected the outcome here, but none exists. Evidence of intoxication does not automatically negate the mens rea necessary for an aggravated battery conviction. There would need to be more.

In *Rodriguez*, the Kansas Supreme Court held that a lesser included offense on reckless homicide was inappropriate when all of the evidence pointed to injuries resulting from intentionally inflicted trauma to the victim. 295 Kan. at 1154. "The evidence was not that [the victim's] injuries were simply the result of trauma, perhaps recklessly inflicted, but rather that the injuries were the result of intentionally inflicted trauma." 295 Kan. at 1154. Moreover, the evidence of McClure's state of mind was not central to the State's case like in *Rodriguez*, because the State focused its efforts on showing that McClure—not some other guy—pulled the trigger.

Although the district court may have erred by failing to provide the jury with the lesser included offense instruction, McClure fails to firmly convince this court that the jury's verdict would have been affected by the inclusion. See *Williams*, 295 Kan. at 523-24 ("[J]ust because we find that a rational jury *could* have found Williams guilty of the lesser included offense does not necessarily mean that we believe that the jury *would* have convicted her of the lesser offense."). Even assuming the evidence supported a conviction of reckless aggravated battery, it is not enough to overcome McClure's high hurdle to firmly convince this court that the outcome would have been affected by including the jury instruction.

II.     McClure's Constitutional Challenge to K.S.A. 21-6304(a)(3)(A)

McClure also challenges his conviction under K.S.A. 21-6304(a)(3)(A) for criminal possession of a firearm by a convicted felon—claiming it violates the Kansas constitution. More specifically, he claims the entire statute is facially unconstitutional and thus likewise his conviction. It is undisputed that McClure failed to bring this challenge to the district court. Generally, appellate courts do not consider constitutional challenges raised for the first time on appeal. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). McClure argues that this court should nevertheless review the merits of his claim because the issue meets an exception to this general prohibition.

16

Appellate courts recognize three prudential exceptions to the general prohibition prohibiting appellate review of unpreserved claims when: (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *Allen*, 314 Kan. at 283. An appellate court's decision to review an unpreserved claim under an exception is prudential; even if an exception applies, the appellate court is not obligated to review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

McClure contends the first and second exceptions apply because his claim presents a pure question of law and the court's review is necessary to serve the ends of justice. He also contends that the right to bear arms protected by both the federal and Kansas Constitutions is a fundamental right and that this court's failure to review the claim risks erosion of those rights.

McClure points to several unpublished cases from this court that declined to reach the merits of similar constitutional challenges raised for the first time on appeal. Those panels identified several reasons for declining to embark on prudential review of the unpreserved claim, including the defendant's failure to adequately address the lack of preservation and the lack of necessary record from the district courts. See *State v. Warren*, No. 122,207, 2022 WL 628681, at *3 (Kan. App. 2022) (unpublished opinion) ("Warren does nothing to overcome the total lack of development of a proper record at the district level."); *State v. Hastings*, No. 122,184, 2021 WL 2748215, at *2 (Kan. App. 2021) (unpublished opinion) (the trial judge did not have the opportunity to address the issue in context and that analysis would have benefitted appellate review); *State v. Pugh*, No. 120,929, 2021 WL 218900, at *5 (Kan. App. 2021) (unpublished opinion) (declining to reach the merits of the appellant's claim because there was a "lack of evidence in the record to supply [the] court a sound foundation for meaningful review"); *State v. Tucker*,

17

No. 121,260, 2020 WL 7293619, at *7 (Kan. App. 2020) (unpublished opinion) (declining to address the merits of the appellant's claim because his preservation argument was "inadequately briefed, insufficiently analyzed, . . . and wholly conclusory").

Additionally, panels of this court and the Kansas Supreme Court have declined to review similar unpreserved constitutional challenges when the claim relies on a finding that the protections of the Kansas Constitution differ from those in the United States Constitution. See *State v. Kemmerly* 319 Kan. 91, 103-04, 552 P.3d 1244 (2024); *State v. McKinney*, 59 Kan. App. 2d. 345, 359 481 P.3d 806 (2021); *State v. Johnson*, No. 121,187, 2020 WL 5587083, at *5-6 (Kan. App. 2020) (unpublished opinion). In *McKinney*, a panel of this court determined that a different statute limiting certain persons from possessing firearms, K.S.A. 2020 Supp. 21-6301(a)(13), was not facially unconstitutional under the Second Amendment to the United States Constitution but declined to address it under section 4 of the Kansas Constitution. See 59 Kan. App. 2d. at 359. There, the panel explained that the appellant failed to provide authority, argument, or historical support for his assertion that section 4 provided an independent, absolute right to possess a firearm outside of his conclusory statement that "[t]o overrule that precedent, the people of Kansas amended section 4 to the current version in 2010." 59 Kan. App. 2d. at 359. Similarly, another panel declined to review an unpreserved claim that the same statute McClure challenges here was unconstitutional:

> "For claims brought under the Kansas Constitution, the Kansas Supreme Court has indicated that anyone advocating a different reading of a Kansas constitutional provision from its federal counterpart must 'explain why [Kansas courts] should depart from [their] long history of coextensive analysis of rights under the two constitutions.' *State v. Boysaw*, 309 Kan. 526, 538, 439 P.3d 909 (2019). Thus, Johnson must articulate something in 'the history of the Kansas Constitution or in our caselaw that would suggest a different analytic framework' should apply to distinguish section 4 from the Second Amendment. 309 Kan. at 536." *Johnson*, 2020 WL 5587083, at *5.

18

A recent Kansas Supreme Court case noted that an unpreserved claim like the one McClure asserts here did not necessarily involve only a question of law. See *Kemmerly*, 319 Kan. at 103-04. In *Kemmerly*, the court noted the observations of the panels of this court declining to extend prudential exceptions in similar contexts and determined that "constitutional questions 'often involve considerable factual development.'" 319 Kan. at 104 (citing *State v. Foster*, 60 Kan. App. 2d 243, 255, 493 P.3d 283 [2021] [quoting *Johnson*, 2020 WL 5587083, at *5]). The court declined to extend a prudential exception to review Kemmerly's unpreserved claim and observed that necessary factual development was absent:

> "And while Kemmerly simply claims that section 4 always prohibits any restriction on the possession of firearms, the State—the party to whom the burden would shift if strict scrutiny were applied—has had no opportunity to develop a factual record 'to establish the requisite compelling interest and narrow tailoring of the law to serve it.'" 319 Kan. at 104 (quoting *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 669, 440 P.3d 461 [2019])."

The *Kemmerly* court explained "the absence of any factual development hamper[ed] [the court's] ability to consider several critical points necessary for the resolution of Kemmerly's constitutional challenge." 319 Kan. at 104.

Like the defendant in *Kemmerly* and many others before, McClure's unpreserved constitutional claim is conclusory and lacks necessary development for complete review. However, a panel of this court has recently provided the guidance McClure seeks regarding the merits of his constitutional claim. See *State v. Hall*, 65 Kan. App. 2d 369, 564 P.3d 786, *rev. denied* 320 Kan. 864 (2025). In *Hall*, the defendant claimed, first to the district court and then again on appeal, that K.S.A. 2020 Supp. 21-6304(a)(3)(A) was facially unconstitutional, meaning that the statute "is unconstitutional in every way it reasonably could be applied." 65 Kan. App. 2d at 382. Thus, the claim was preserved for appeal. The *Hall* majority concluded that K.S.A. 2020 Supp. 21-6304(a)(3)(A) was not

facially unconstitutional under the Kansas Constitution which permitted limited constraints on fundamental rights in the "furtherance of an overarching public good." 65 Kan. App. 2d at 388. Although the panel addressed the preserved facial constitutional challenge, it declined to address the unpreserved as-applied challenge Hall also asserted. 65 Kan. App. 2d at 392.

McClure's unpreserved constitutional challenge does not warrant review under any of the prudential exceptions.

CONCLUSION

McClure's challenges to his convictions for aggravated battery and criminal possession of a firearm are unavailing. The district court is accordingly affirmed.

\* \* \*

ISHERWOOD, J., concurring: I concur in the result.

\* \* \*

ATCHESON, J., concurring in part and dissenting in part: At the crack of dawn, Defendant Eric Joseph McClure fired two shots from a pistol through the driver's side window of his disabled SUV parked on the side of highway K-150. The shots struck a passing SUV in the right rear door panel and near the right rear wheel well. The first shot penetrated the door panel and injured a man sitting in the rear passenger seat.

A jury sitting in Chase County District Court convicted McClure of knowing aggravated battery causing great bodily harm. K.S.A. 21-5413(b)(1)(A). But the jurors faced a forced choice between convicting him of knowing aggravated battery or finding

20

him not guilty because the Chase County District Court did not instruct them on reckless aggravated battery, a lesser degree of the crime. The district court erred in failing to so instruct the jury. And I am firmly convinced that this is one of those rare cases in which the verdict would have been different had the jury been given the option of considering reckless aggravated battery. I would reverse McClure's conviction for aggravated battery and remand for a new trial on that charge.

The salient facts show that on May 13, 2022, McClure's SUV had lost a tire, and McClure pulled over on the north shoulder of K-150 rather than continuing to drive on the rim. Four coworkers were traveling westbound on K-150 to McPherson in an SUV. They passed McClure's SUV at about 6:15 a.m.—literally as dawn broke that day. As the driver and his passengers went by McClure's SUV, they were startled by a loud noise. The passenger sitting in the rear passenger's side seat announced that something had hit him. The driver pulled over and saw what appeared to be bullet holes in the rear passenger door and near the rear wheel well. He opened the door and saw that his passenger was bleeding from his hip area. Someone called 911.

Meanwhile, McClure abandoned his SUV and collapsed in a field about a quarter of a mile from the highway after ditching his pistol. When law enforcement officers found the stuporous McClure, he was babbling incoherently. They discovered the pistol about 20 yards away. EMS personnel administered Narcan to McClure, believing he may have overdosed. EMS personnel also transported the passenger to an area hospital where he was treated for the nonfatal gunshot wound.

At trial, a KBI crime scene investigator testified that the bullet holes in the SUV were about eight inches apart and that McClure's SUV had a bullet hole in the window of the driver's side door. Based on the glass fragments and the general appearance of the window, the investigator concluded that someone inside McClure's SUV had fired

21

through the driver's window. McClure never offered an explanation of his actions on May 13 to investigating law enforcement officers, and he did not testify at trial.

Pertinent here, the State charged McClure with aggravated battery, a severity level 4 person felony, for knowingly causing great bodily harm to the passenger. K.S.A. 21-5413(b)(1)(A), (h)(2)(A). The district court instructed the jury on that charge and the lesser included charge of knowingly causing bodily harm to the passenger with a deadly weapon, a severity level 7 person felony. K.S.A. 21-5413(b)(1)(B), (h)(2)(B). The only practical difference between the charges entailed the degree of the passenger's injury—bodily harm versus great bodily harm—since there was no serious dispute that the pistol constituted a deadly weapon.[1]

[1] The difference between bodily harm and great bodily harm is largely left to the good judgment of the jurors in a given case based on the particular circumstances. See *State v. Knapp*, No. 123,751, 2022 WL 4282225, at *2 (Kan. App. 2022) (unpublished opinion). There are no well-developed guidelines or factors for making the determination. *State v. Salem*, No. 118,351, 2019 WL 2237382, at *11 (Kan. App. 2019) (unpublished opinion) (Kansas caselaw creates "a vast gray area . . . that encompasses conduct a jury could find to be great bodily harm but which is not conclusively so."). But that has nothing to do with the instructional problem in this case.

McClure did not ask the district court for jury instructions on any form of reckless aggravated battery. K.S.A. 21-5413(b)(2). And the district court did not give any such instructions. Reckless aggravated battery causing great bodily harm is a severity level 5 person felony. K.S.A. 21-5413(b)(2)(A), (h)(2)(C). Reckless aggravated battery causing bodily harm with a deadly weapon is a severity level 8 person felony. K.S.A. 21-5413(b)(2)(B), (h)(2)(D). Essentially, knowing misconduct amounting to aggravated battery is punished more harshly than reckless misconduct resulting in comparable harm to the victim. I turn to those culpable mental states to explain the district court's error in failing to instruct on reckless aggravated battery.

Culpable mental states are defined in K.S.A. 21-5202. A defendant acts "recklessly" if he or she "consciously disregards a substantial and unjustifiable risk that . . . a result will follow." K.S.A. 21-5202(j). Such disregard must amount to "a gross deviation from the standard of care, which a reasonable person would exercise." K.S.A. 21-5202(j). As defined in K.S.A. 21-5202(i), a defendant acts "knowingly" when he or she is "aware that [their] conduct is reasonably certain to cause the result" about which the State has complained. Here, that would be the injury to the passenger. As I explain shortly, the fit between the facts and those culpable mental states leans well toward recklessness.

In considering instructional error, we ask whether the instruction would be legally appropriate. Here, reckless aggravated battery is a lesser degree of knowing aggravated battery, so it would have been legally appropriate. *State v. Couch*, 317 Kan. 566, 590-91, 533 P.3d 630 (2023), *abrogated on other grounds by State v. Garcia-Martinez*, 318 Kan. 681, 546 P.3d 750 (2024). We then ask if the instruction would have been factually appropriate in the case at hand. In making that determination, the evidence must be viewed in a light most favorable to giving the instruction. The instruction should be given if a reasonable jury might bring back a guilty verdict on that charge. 317 Kan. at 591. Moreover, a district court is statutorily obligated to instruct a jury on an appropriate lesser included offense, even if neither side has requested an instruction. K.S.A. 22-3414(3); *Couch*, 317 Kan. at 591.

Here, the facts show McClure fired his pistol twice through the driver's window of his disabled motor vehicle at a passing SUV, aiming in such a way that the bullets struck the rear passenger door and near the rear wheel well. The SUV passed in the lane next to McClure's vehicle. So McClure shot at close range.

Nothing in the record indicates McClure shot at the passing SUV for any reason other than its physical presence at that moment. That McClure fired at the vehicle's body

23

rather than at any of the windows suggests a motive in mischief or vandalism rather than an intent to injure or kill the driver or another occupant of the SUV. To be sure, however, mischief carried out with a handgun creates a real risk of serious bodily harm to anyone in the potential line of fire. This case illustrates that very point. In turn, instructions on reckless aggravated battery causing great bodily harm or bodily harm with a deadly weapon would have been factually appropriate.

Because instructions on reckless aggravated battery were both legally and factually appropriate, the district court erred in failing to instruct the jury on those lesser included crimes. See K.S.A. 22-3414(3) ("[T]he judge shall instruct the jury as to the crime charged and any [appropriate] lesser included crime.") But McClure neither requested those instructions nor objected to the district court's failure to give them. In short, he did not preserve the error in the district court. While that does not preclude consideration of the point on appeal, it substantially affects our standard of review. We may grant a defendant relief only if the omission is clearly erroneous. That requires we be "firmly convinced" the outcome at trial would have been different if the district court had given the instruction or instructions. *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024). I recognize the standard to be a formidable one.

But the "knowingly" culpable mental state doesn't fit the facts of this case very well. The district court's jury instruction incorporated the statutory language from K.S.A. 21-5202(i). To convict, the jury had to find beyond a reasonable doubt that McClure would have been "reasonably certain" his misconduct would result in either bodily harm or great bodily harm to someone in the passing SUV. But the placement of the shots cuts against the notion McClure intended to harm anyone or that he understood the likelihood of such harm approached a certainty. Shooting into the frame of the SUV simply did not create that high degree of probability a person would be injured as a result.

Reasonable jurors might have fairly debated those circumstances. In this case, however, the debate would have been impermissibly blinkered because of the district court's failure to inform the jurors they could consider reckless aggravated battery. The failure imposed a legally impermissible forced choice on the jurors. They had to convict McClure of knowing aggravated battery—even if the facts were an ill-suited fit to that crime—or find him not guilty despite the obvious blameworthiness of his actions. The district court effectively told the jurors as much in the instructions: "You may find the defendant guilty of aggravated battery, great bodily harm; aggravated battery, bodily harm with a deadly weapon; or not guilty." See *State v. Plummer*, 45 Kan. App. 2d 700, 711, 251 P.3d 102 (2011) (finding similar impermissible forced choice where jury was instructed on robbery but not theft, as a lesser degree of the same crime), *affirmed* 295 Kan. 156, 283 P.3d 202 (2012).

Had the jurors here been afforded the full range of legally and factually appropriate lesser included offenses for their consideration, I am firmly convinced they would have convicted McClure of reckless aggravated battery causing great bodily harm. I do not question the propriety of the jurors' conclusion that the passenger suffered great bodily harm. They had the option to convict McClure of knowing aggravated battery causing only bodily harm; they fairly rejected that option. The degree of the passenger's injury has no bearing on the appropriate culpable mental state to be attributed to McClure. The facts hew far more closely to the statutory definition of "recklessly" than they do to the definition of "knowingly." I am confident fair-minded jurors would have recognized that the facts established "an unjustifiable risk" of great bodily harm rather than a "reasonable certainty" of such harm.[2]

[2] McClure's apparent intoxication does not directly affect my analysis. First, voluntary intoxication is not an appropriate legal defense to crimes requiring a reckless culpable mental state. *State v. Claerhout*, 310 Kan 924, 938, 453 P.3d 855 (2019). So that is not a consideration. While intoxication might be evidence supporting a reckless mental state, 310 Kan. at 937-38, the legal error here and the proper result do not turn on

25

McClure's intoxication. There would have been clear error had McClure been sober when he shot at the passing SUV.

Based on McClure's undisputed criminal history score of E, the district court sentenced him to serve 60 months in prison on the knowing aggravated battery conviction, reflecting a midrange presumptive guidelines punishment. Had McClure been convicted of reckless aggravated battery causing great bodily harm, he would have faced a presumptive guidelines sentence of between 46 and 51 months in prison, with a midrange of 49 months. See K.S.A. 21-6804. From that perspective, McClure has plainly been disadvantaged. I would reverse McClure's conviction for aggravated battery and remand for a new trial on that charge.

McClure has also challenged his conviction for being a felon in possession of a firearm. He contends K.S.A. 21-6304, the statute defining the crime, runs afoul of section 4 of the Kansas Constitution Bill of Rights protecting the right of Kansans to possess firearms. He has raised the issue for the first time on appeal. Under the circumstances here, I agree with my colleagues we should decline to entertain his constitutional argument. So I would affirm that conviction.